UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**REFLECTION MANUFACTURING, LLC,**

**Plaintiff,**

**-vs-**                                                      **Case No.  6:10-cv-1951-Orl-19GJK**

**I.S.A. CORPORATION,**

**Defendant.**
_____

# ORDER

This case comes before the Court on the following:

1.     Amended Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Transfer Venue to the District of Oregon by Defendant I.S.A. Corporation (Doc. No. 11, filed Dec. 3, 2010);

2.     Response in Opposition to Amended Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Transfer Venue by Plaintiff Reflection Manufacturing, LLC (Doc. No. 14, filed Dec. 28, 2010); and

3.     Reply to Response to Amended Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Transfer Venue by Defendant I.S.A. Corporation (Doc. No. 28, filed Jan. 18, 2011).

**Background**

**I.  Undisputed Facts**

Plaintiff Reflection Manufacturing, LLC ("Reflection") is a Florida limited liability company with its principal place of business in Tampa, Florida.  (Doc. No. 14-1 ¶ 3.)  Its President is John

DeKeyser.  (*Id.*)  Following the Deepwater Horizon Oil Spill in April 2010, Reflection obtained a purchase order to supply 1,000,000 rubber shoe covers ("boots") to Grainger Industrial Supplies ("Grainger") at a warehouse in Theodore, Alabama, by September 30, 2010.  (Doc. No. 14-1 ¶¶ 10-12.)

Defendant I.S.A. Corporation ("ISA") is an Oregon corporation with its principal offices and manufacturing facility in Salem, Oregon.  (Doc. No. 11-1 ¶ 1.)  John L. Feusner, Jr. is the Chief Executive Officer of ISA.  (*Id.*)  ISA manufactures rubber gloves, boots, and other personal protective equipment.  (*Id.* ¶ 2.)  ISA has no office, place of business, manufacturing facilities, or employees in Florida.  (*Id.* ¶¶ 3-4.)  According to Feusner, ISA has not solicited services or orders from customers in Florida, has not manufactured any products or materials for use or consumption within Florida, has never entered into any contract that required it to perform acts within Florida, and does not have any "substantial customers or contracts with Florida residents."  (*Id.* ¶ 17, 21-22.)  Feusner further asserted that "[o]ver the past three years, ISA has only conducted business with one Florida resident - Reflection," (Doc. No. 28-1 ¶ 15), and that ISA's only contact with the state of Florida involved the orders solicited by Reflection and shipped to Theodore, Alabama.  (Doc. No. 11-1 ¶ 17.)

Reflection, through its Director of Product Engineering, Glenn McGinnis, located ISA's website offering boots for sale.  (Doc. No. 14-1 ¶ 14.)  On or about July 8, 2010, McGinnis called the phone number provided on ISA's website and inquired about purchasing 500,000 boots.  (*Id.* ¶ 15.)  Through subsequent emails and teleconferences, ISA and Reflection began negotiating a contract for the manufacture and sale of 500,000 boots.  (*Id.* ¶ 16.)

Reflection requested a pro forma invoice from ISA to document ISA's commitment to sell a specified number of boots to Reflection on particular terms. (Doc. No. 28-1 ¶ 3.) On or about July 9, 2010, one day after Reflection first made contact with ISA, DeKeyser received "a preliminary document marked pro forma invoice . . . from ISA," which listed Reflection's Orlando, Florida, address as the "Bill to" and "Ship to" address. (Doc. No. 14-1 ¶ 23.) Feusner asserts, and there is no evidence to the contrary, that an Orlando address was provided on the pro forma invoice because Refection could not supply ISA with the shipping address to the warehouse in Theodore, Alabama, at the time. (Doc. No. 28-1 ¶ 3.) Subsequent invoices sent by ISA to Reflection contained a Theodore, Alabama, shipping address and an Orlando, Florida, billing address. (Doc. No. 11-1 at 11-13.)

ISA required Reflection to provide a $200,000 pre-payment and a letter of credit in the amount of $1,670,000. (Doc. No. 14-1 ¶ 20.) The formation of the sales contract was conditioned on Reflection obtaining and delivering the letter of credit to ISA. (*Id.* ¶ 21.) Based on the recommendation of a third party, Reflection attempted to obtain the requisite letter of credit from Bibby International Trade Finance, Inc. ("Bibby"). (*Id.* ¶ 27.) Feusner advised DeKeyser that ISA would accept a letter of credit from Bibby. (*Id.* ¶ 29.) In reliance on Bibby's statements that a letter of credit was forthcoming, Reflection sent the $200,000 pre-payment to ISA by two wire transfers of $100,000 on July 15 and 19, 2010, which ISA accepted into an Oregon bank account. (*Id.* ¶¶ 30-31; Doc. No. 11-1 ¶ 8.)

On or about July 21, 2010, ISA informed Reflection that it had shipped 2,500 boots to the designated warehouse in Theodore, Alabama. (Doc. No. 14-1 ¶ 32.) ISA invoiced Reflection for this shipment at its Orlando address. (*Id.* ¶ 33, Doc. No. 11-1 at 11.) On July 26, 2010, DeKeyser

flew to Oregon, met with Feusner at ISA's offices, toured ISA's manufacturing facility, and confirmed the terms of Reflection's order of boots.  (Doc. No. 11-1 ¶ 10.)

In August 2010, DeKeyser emailed Feusner a Non-Disclosure & Evaluation Agreement for Subcontractor Manufacturing and/or Distribution Marketing for RM Customers ("Nondisclosure Agreement").  (Doc. No. 14-1 ¶ 34.)  According to DeKeyser, he "informed Feusner that ISA had to execute the Nondisclosure Agreement to do business with Reflection."  (*Id.* ¶ 35.)  Feusner signed the Nondisclosure Agreement on August 10, 2010.  (*Id.* at 13.)  Feusner then emailed a signed copy of the Agreement to DeKeyser, which DeKeyser signed on August 12, 2010.  (*Id.* ¶ 37, at 13.)  DeKeyser maintained that "Reflection would not have done business with ISA had it not executed the Nondisclosure Agreement."  (*Id.* ¶ 40.)  The Nondisclosure Agreement is the only executed, written agreement between Reflection and ISA.  (*Id.* ¶ 39.)

Feusner stated that the Nondisclosure Agreement was presented to him in connection with DeKeyser's inquiry about whether ISA would manufacture a nose guard with an air filtration device for Reflection.  (Doc. No. 28-1 ¶ 13.)  According to Feusner, DeKeyser flew to Oregon to discuss whether ISA had the capacity to produce the nose guard, and DeKeyser required Feusner to sign the Nondisclosure Agreement before DeKeyser showed Feusner the nose guard.  (*Id.*)  Feusner maintained that the Nondisclosure Agreement pertained solely to the nose guard and had no bearing on ISA's manufacture of boots for Reflection.  (*Id.*)  ISA never manufactured nose guards for Reflection.  (*Id.*)

Bibby failed to issue Reflection a letter of credit.  (Doc. No. 14-1 ¶ 42.)  On or about August 5, 2010, Feusner sent a draft supply agreement to DeKeyser in Florida for execution as an alternative to the letter of credit.  (Doc. No. 11-1 ¶ 12.)  That agreement was not executed by Reflection.  (*Id.*

¶ 13; Doc. No. 14-1 ¶ 41.)  DeKeyser sent a draft agreement in response to Feusner, which also was not executed.  (*Id.*)

On or about September 20, 2010, DeKeyser was informed that ISA shipped 10,800 boots to the warehouse in Theodore, Alabama.  (*Id.* ¶ 48.)  ISA sent an invoice for that shipment to Reflection's Orlando address.  (*Id.* ¶ 49; Doc. No. 11-1 at 12.)  On September 23, 2010, DeKeyser advised Feusner by email that Reflection would continue to accept shipments of boots through September 30, 2010, so long as advanced notice of the shipments was provided, and that Reflection would not accept or pay for boots shipped after September 30, 2010.  (Doc. No. 14-1 ¶ 50.)  According to DeKeyser, ISA "untimely delivered an additional shipment of 14,000 boots to the warehouse." (*Id.* ¶ 52.)  ISA sent an invoice dated October 5, 2010, to Reflection's Orlando office marked "paid" for this shipment.  (Doc. No. 11-1 at 13.)

Reflection thereafter demanded that ISA return $150,258 to Reflection, which represented the $200,000 pre-payment less the cost of the first two shipments of 2,500 and 10,800 boots.  (Doc. No. 14-1 ¶¶ 54-55.)  According to Reflection, ISA has not returned the balance of the pre-payment as requested.  (*Id.* ¶ 56.)

## II.  Procedural History

Reflection commenced this case by filing a Complaint in the Thirteenth Judicial Circuit Court, in and for Hillsborough County, Florida, seeking judgment in the amount of $150,000 against ISA for unjust enrichment and conversion of the pre-payment.  (Doc. No. 2, filed Nov. 8, 2010.)  On November 8, 2010, ISA removed the case to this Court.  (Doc. No. 1.)

On December 3, 2010, ISA moved to dismiss the case for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted, or in the alternative, to transfer this case

to the District of Oregon. (Doc. No. 11.) Reflection filed a Response in opposition, requesting leave to conduct limited discovery on jurisdictional issues. (Doc. No. 14.) On January 11, 2011, the Court authorized limited discovery and directed the parties to file amended submissions by March 9, 2011. (Doc. No. 27 at 3, filed Jan. 11, 2011.) ISA filed a reply brief with leave of Court on January 18, 2011. (Doc. No. 28.) Neither party has submitted any additional information to the Court as of the date of this Order.

## Standard of Review

### I.  Motion to Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by "[p]resent[ing] enough evidence to withstand a motion for directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citations and internal quotation omitted).  Where, as here, "the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.*  If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, "the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

### II.  Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).  As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible.  *Id.* at 1950-51.

## Analysis

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists.  "[T]he exercise of jurisdiction must: (1) be appropriate under the state long-arm statute; and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  ISA and Reflection dispute both of these requirements.  (Doc. No. 11 at 9-20; Doc. No. 14 at 8-13.)

"In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'"  *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)).  Because Reflection and ISA dispute whether there is specific long-arm jurisdiction, (Doc. No. 11 at 10-16; Doc. No. 14 at 9-11), the Court will address the legal sufficiency of Reflection's claims against ISA before determining whether there is personal jurisdiction over ISA.

## I.  Sufficiency of Claims

### A.  Count I: Unjust Enrichment

Reflection asserts that ISA is liable for unjust enrichment in the amount of $150,000 for retaining the balance of the $200,000 pre-payment.  (Doc. No. 2 at 2-3.)  "The essential elements . . . of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof."  *Swindell v. Crowson*, 712 So.2d 1162, 1163 (Fla. 2d DCA 1998).

Reflection sufficiently pleads each of these elements.  Reflection alleges that it remitted $200,000 to ISA as a pre-payment in anticipation of forming a contract to purchase 500,000 boots, that the contract never formed due to Reflection's inability to satisfy the condition precedent of obtaining a letter of credit, and that despite delivering only 13,300 boots, ISA continues to withhold the balance of the pre-payment.  (Doc. No. 2 ¶¶ 4-11.)  Although the existence of a contract precludes an unjust enrichment claim as a matter of law, *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2010), Reflection alleges that a contract never formed due to the failure of a condition precedent.  (Doc. No. 2 ¶¶ 5-6, 8); *see S. Internet Sys., Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125, 1128 (Fla. 4th DCA 2009) ("[T]he condition precedent to the formation of a contract was never met.  Hence, no contract was ever fully formed.").  Accordingly, the unjust enrichment claim in Count I is well pled.

### B. Count II: Conversion

In Count II of the Complaint, Reflection claims that ISA converted the balance of the pre-payment.  (Doc. No. 2 at 3.)  The elements of conversion in Florida are: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Special Purpose v. Prime One*, 125 F. Supp. 2d 1093, 1099-1100 (S.D. Fla. 2000) (citing *Warshall v. Price*, 629 So.2d 903, 904 (Fla. 4th DCA 1993)).  Further, "[i]t is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).  "In order for there to be a conversion where money is involved, 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'"

*Walker v. Figarola*, No. 3D09-2342, ___ So. 3d ___, 2011 WL 799737, at *1 (Fla. 3d DCA Mar. 9, 2011) (quoting *Gasparini*, 972 So. 2d at 1056).

The facts alleged in the Complaint do not plausibly establish a claim for conversion of money.  Reflection alleges that the balance of the pre-payment, a sum of $150,000, was converted, and there are no allegations that the pre-payment funds were required to be held in a specifically identifiable manner.  (Doc. No. 2 ¶¶ 6-7, 13-14.)  Accordingly, Reflection fails to state a claim for conversion upon which relief can be granted.  *See Walker*, 2011 WL 799737, at *1 (finding no well pled conversion claim where there was no allegation that the allegedly converted money was to be held separately from other funds, such as in a separate trust or escrow account).

## II.  Personal Jurisdiction

### A.  Florida Long-Arm Statute

"The Florida long-arm statute is strictly construed, and the person invoking jurisdiction under it has the burden of proving facts which clearly justify" its use.  *Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983).  Under Florida's long-arm statute, an out-of-state corporation submits itself to the jurisdiction of Florida courts "for any cause of action arising from the doing of," among other things, the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state . . . .

(b) Committing a tortious act within this state. . . .

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
1. The defendant was engaged in solicitation or service activities within this state; or

> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use. . . .

Fla. Stat. § 48.193(1).  The parties dispute whether ISA's conduct satisfies these provisions of the Florida long-arm statute, (Doc. No. 11 at 10-16; Doc. No. 14 at 9-11), and the Court will address each in turn.

### 1. Carrying On Business in Florida, Fla. Stat. § 48.193(1)(a)

To establish long-arm jurisdiction under Section 48.193(1)(a), "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit."  *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)).  "It is not necessarily the number of transactions, but rather the nature and extent of the transaction(s) that determine[ ] whether a person is 'carrying on a business or business venture' within the state."  *Joseph v. Chanin*, 869 So. 2d 738, 740 (Fla. 4th DCA 2004) (citation omitted).  "Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, . . . the possession and maintenance of a license to do business in Florida, . . . the number of Florida clients served, . . . and the percentage of overall revenue gleaned from Florida clients . . . ."  *Horizon*, 421 F.3d at 1167 (citations omitted).

The first three *Horizon* factors indicate that ISA's conduct does not amount to "carrying on a business or business venture" in Florida, as ISA has no office, license to do business, or employees in Florida.  (Doc. No. 11-1 ¶¶ 3-4, 23.)  In addition, "[o]ver the past three years, ISA has only conducted business with one Florida resident - Reflection," (Doc. No. 28-1 ¶ 15), and Reflection has submitted no evidence to the contrary.  Absent any evidence of record indicating what percentage

of ISA's business came from Reflection, there can be no analysis under the fourth *Horizon* factor. In any case, the remaining *Horizon* factors suggest that ISA does not "carry[] on a business or business venture" in Florida under Section 48.193(1)(a).

Beyond the *Horizon* factors, the absence of long-arm jurisdiction under Section 48.193(1)(a) is evident from ISA's limited conduct in Florida arising from a single, unsolicited transaction with a Florida resident for the delivery of goods manufactured in Oregon to a warehouse in Alabama over the span of three months.  In some cases, a single transaction may constitute "a business venture" satisfying Section 48.193(1)(a).  *Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.*, 766 So. 2d 1163, 1164 (Fla 3d DCA 2000).  For example, in *Atlantis Marina*, Section 48.193(1)(a) was satisfied by a foreign corporation bringing a $1.45 million yacht to Florida, marketing it over a period of time, and ultimately selling it in Florida.  *Id.*  However, unlike the conduct in *Atlantis Marina*, no representative of ISA ever set foot in Florida, (Doc. No. 11-1 ¶ 24), and ISA's conduct bore an extremely attenuated relationship with Florida.  ISA manufactured the boots in Oregon and shipped the boots to Theodore, Alabama, as directed by Reflection.[1]  (*Id.* ¶ 26; Doc. No. 14-1 ¶¶ 12-16.)  Other than delivering four invoices to Reflection's address in Orlando, negotiating the sale of boots with Reflection by phone and email, emailing the signed Nondisclosure Agreement to

---

[1] DeKeyser received "a preliminary document marked pro forma invoice . . . from ISA," which listed an Orlando, Florida, shipping address.  (Doc. No. 14-1 ¶ 23, at 11.)  However, no evidence of record suggests that the parties intended the boots to be shipped to Orlando as suggested by the pro forma invoice.  Feusner asserted that the Orlando address was listed as the shipping address on the pro forma invoice only because representatives of Refection could not supply ISA with the shipping address for the warehouse in Theodore, Alabama, at the time.  (*Id.* ¶ 3.)  Further, DeKeyser's averments indicate that at all times, Reflection intended the boots to be sent to Theodore, Alabama, to fulfill the purchase order with Grainger.  (Doc. No. 14-1 ¶¶ 11-12, 15.)

Reflection,[2] and emailing a proposed supply agreement to Reflection as a substitute for the letter of credit, ISA directed no conduct to Florida.  (Doc. No. 11-1 ¶¶ 12, 17-22, at 11-13; Doc. No. 14-1 ¶ 16, at 13.)

ISA's limited contact with Florida is also distinguishable from *Control Laser Corp. v. Rocky Mountain Instrument Co.*, 130 F. Supp. 2d 1344 (M.D. Fla. 2000), where Section 48.193(1)(a) was found satisfied based on the defendant's negotiations by letter, phone, and fax sent to Florida and the resulting contract obligating the defendant to deliver finished products to a Florida resident in Florida. *Id.* at 1346. Although ISA corresponded with a Florida resident located in Florida like the defendant in *Control Laser*, ISA did not contract with Reflection or any other customer to deliver products to Florida. (Doc. No. 11-1 ¶¶ 17, 26; Doc. No. 14-1 ¶ 12.)

Further, exercising long-arm jurisdiction under Section 48.193(1)(a) is inappropriate since ISA did not actively solicit business in Florida and Reflection initiated the business relationship at issue in this suit. (Doc. No. 11-1 ¶¶ 5, 17, 24; Doc. No. 14-1 ¶ 15). *Compare Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 4th DCA 1999) (finding no long arm jurisdiction under Section 48.193(1)(a) where the plaintiff, a Florida corporation, requested and purchased nineteen mailing lists over a two-year period from a foreign

---

[2] DeKeyser's averred that he "informed Feusner that ISA had to execute the Nondisclosure Agreement to do business with Reflection" and that "Reflection would not have done business with ISA had it not executed the Nondisclosure Agreement." (Doc. No. 14-1 ¶¶ 35, 40.) These assertions are belied by the date of execution of the Agreement, August 10, 2010, more than two weeks after Reflection submitted the pre-payment of $200,000 and ISA delivered 2,500 boots to Theodore, Alabama. (*Id.* ¶¶ 31-32, at 13.) Further, Feusner maintained that the Nondisclosure Agreement pertained only to Reflection's inquiry as to whether ISA could manufacture a particular nose guard. (Doc. No. 28-1 ¶ 13.) However, construing all reasonable inferences from the evidence in favor of Reflection, *Meier*, 288 F.3d at 1269, the Court presumes that the Nondisclosure Agreement was, as stated by DeKeyser, essential to the business relationship between Reflection and ISA.

-13-

corporation that did not solicit any business in Florida beyond placing advertisements in international magazines), *with Bank of Wessington v. Winters Gov't Sec. Corp.*, 361 So. 2d 757, 759-60 (Fla. 4th DCA 1978) (holding that an out-of-state bank's solicitation of ten oral contracts for the sale of insurance qualified as "carrying on a business" in Florida).

Reflection contends that ISA's website establishes long-arm jurisdiction under Section 48.193(1)(a). (Doc. No. 14 at 10.) This argument is without merit. It is undisputed that Reflection did not purchase or attempt to purchase boots from ISA through its website. Rather, Reflection initially contacted ISA using a telephone number obtained from the website and conducted negotiations with ISA through emails and teleconferences. (Doc. No. 14-1 ¶¶ 15-16.) Moreover, at the time Reflection initially contacted ISA, ISA's website did not permit customers to place orders online and merely contained basic information regarding ISA's business. (Doc. No. 28-1 ¶¶ 7, 9.) According to DeKeyser, ISA's website listed prices of its products and stated that its products were available "to all 48 continental US States." (*Id.* ¶ 7; Doc. No. 14-1 ¶ 14.) However, absent any evidence that ISA sold products through its website to Reflection or any other Florida resident at the time Reflection sought to purchase boots from ISA, the website does not establish long-arm jurisdiction on the basis of a general course of business activity conducted in Florida. *See Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1314-15 (M.D. Fla. 2010) (finding no long-arm jurisdiction under Section 48.193(1)(a) where the defendant, a resident of New Jersey, had no contact with Florida except two Florida trips unrelated to the litigation and sixteen art sales to Florida residents from his website over the span of thirteen years, all of which were unrelated to the defendant's allegedly infringing works).

In summary, a single arrangement between ISA and Reflection for the sale of boots manufactured in Oregon and delivered to Alabama, without more, does not amount "a general course of business activity in [Florida] for pecuniary benefit." *Horizon*, 421 F.3d at 1167.   Accordingly, Reflection cannot assert long-arm jurisdiction over ISA under Section 48.193(1)(a).

### 2. Tortious Activity in Florida, Fla. Stat. § 48.193(1)(b)

The Florida long-arm statute also covers causes of action arising from "[c]ommitting a tortious activity within" Florida. Fla. Stat. § 48.193(1)(b).  To establish jurisdiction under this prong of the long-arm statute, a plaintiff "must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir.1990) (citation and punctuation omitted).  Physical presence in Florida is not necessary where the alleged tort is accomplished "by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications." *Wendt*, 822 So.2d at 1253; *see also Horizon*, 421 F.3d at 1168-69 (finding that the alleged tort arose out of Florida conduct where a company's agent made purposefully misleading statements over the telephone to a client in Florida, amounting to "constructive fraud"); *Acquadro v. Bergeron*, 851 So.2d 665, 670 (Fla. 2003) (finding that the alleged tort arose out of Florida conduct where the out-of-state defendant defamed the plaintiff in a phone call to a person in Florida).

Notwithstanding Reflection's failure to state a claim for the tort of conversion upon which relief can be granted, *see supra* part I.B, none of ISA's allegedly tortious acts occurred in Florida. In anticipation of contracting with ISA to purchase boots, Reflection submitted the $200,000 pre-payment to ISA by wiring money to ISA's bank in Oregon.  (Doc. No. 11-1 ¶ 8; Doc. No. 14-1 ¶

31.)  According to DeKeyser, Reflection demanded that ISA return of the balance of the pre-payment after Reflection failed to obtain the condition precedent letter of credit and ISA shipped boots in derogation of Reflection's instructions.  (Doc. No. 14-1 ¶¶ 42, 50-52, 55.)  Even though Reflection initially sent the pre-payment from Florida, ISA's allegedly unlawful retention of the pre-payment in its Oregon bank account, (*id.* ¶ 56; Doc. No. 11-1 ¶ 8), without more, does not bring ISA's conduct within the purview of Section 48.193(1)(b).  *See Merkin v. PCA Health Plans of Fla., Inc.*, 855 So. 2d 137, 140 (Fla. 3d DCA 2003) (finding no long-arm jurisdiction under Section 48.193(1)(b) where funds allegedly were wired by mistake from Florida to California and wrongfully withheld in California); *see also Envases Venezolanos, S.A. v. Collazo*, 559 So. 2d 651, 652 (Fla. 3d DCA 1990) ("[A] tort claim is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place." (internal quotation omitted)).

ISA's allegedly wrongful retention of funds in Oregon is readily distinguishable from cases where an out-of-state actor unlawfully withheld items located in Florida or traveled to Florida to obtain items and allegedly withheld them in another state.  *Cf. Gerber Trade Finance, Inc. v Bayou Dock Seafood Co., Inc.*, 917 So. 2d 964, 967 (Fla. 3d DCA 2005) (finding Section 48.193(1)(b) satisfied where the defendant allegedly converted seafood located in Miami, Florida, by withholding it on demand from its rightful owner); *Joseph*, 869 So. 2d at 740 (finding Section 48.193(1)(b) satisfied where the defendants allegedly traveled to Florida, wrongfully obtained the contents of their deceased father's safe deposit box and bank account, and withheld those items on demand from the rightful owner).  Because it is undisputed that Reflection's initial transfer of the pre-payment to ISA in Oregon was lawful, (Doc. No. 11-1 ¶¶ 7-8; Doc. No. 14-1 ¶¶ 20, 34), all of ISA's allegedly

tortious actions in retaining the pre-payment funds occurred in Oregon, not Florida, and there is no long-arm jurisdiction under Section 48.193(1)(b).

### 3. Causing Injury to Persons or Property within Florida, Fla. Stat. § 48.193(1)(f)

Section 48.193(1)(f) "contemplate[s] personal injury or physical property damage" within the State of Florida and does not apply to claims alleging only economic damages. *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc*., 511 So.2d 992, 994 (Fla. 1987).  Reflection pleads claims of unjust enrichment and conversion against ISA, and the only relief sought is the balance of the pre-payment allegedly retained by ISA.  (Doc. No. 2 at 2-3.)  Because Reflection's allegations of damages do not involve personal injury or property damage, there is no long-arm jurisdiction under Section 48.193(1)(f).  Long-arm jurisdiction under Section 48.193(1)(f) is also inappropriate here because ISA was not engaged in solicitation or service activities in Florida, (Doc. No. 11-1 ¶¶ 17, 21-22, Doc. No. 14-1 ¶ 15), and because the boots manufactured by ISA for Reflection never entered Florida.  (Doc. No. 11-1 ¶ 17, at 11-13; Doc. No. 14-1 ¶ 12); *see* Fla. Stat. § 48.193(1)(f)(1)-(2) (providing long-arm jurisdiction for actions involving personal injury or property damage where "the defendant was engaged in solicitation or service activities within this state; or [where] [p]roducts . . . manufactured by the defendant anywhere were used or consumed within this state").

In summary, Reflection has not met its burden of establishing that its claims against ISA fall within Florida's long-arm statute.  *Oriental*, 701 F.2d at 891.  To the extent Reflection argues that the forum selection clause of the Nondisclosure Agreement substitutes for satisfying an enumerated provision of the Florida long-arm statute, (Doc. No. 14 at 10), that argument has been squarely rejected.  In *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987), the Florida Supreme Court held that the Florida long-arm statute is not satisfied merely by a Florida forum selection clause in a

contract. *Id.* at 543. Federal courts must follow the Florida Supreme Court's interpretation of the Florida long arm statute when determining the issue of personal jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Therefore, the existence of the Florida forum selection clause in the Nondisclosure Agreement is irrelevant to the analysis under the Florida long arm statute, and Reflection's failure to satisfy any prong of the Florida long arm statute precludes this Court from exercising personal jurisdiction over ISA. *McRae*, 511 So. 2d at 543. Further, the absence of long-arm jurisdiction renders a discussion of personal jurisdiction under the Due Process Clause unnecessary, *Estate v. Scutieri v. Chambers*, 386 F. App'x 951, 953 (11th Cir. 2010), and the Court "is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). Accordingly, the Court will not address ISA's alternative argument that this case should be transferred to the District of Oregon, and the case will be dismissed without prejudice to its refiling in a proper forum.

### Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Amended Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Transfer Venue to the District of Oregon by Defendant I.S.A. Corporation (Doc. No. 11) is **GRANTED**. This case is **DISMISSED without prejudice** for lack of personal jurisdiction over Defendant I.S.A. Corporation.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 18, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record